IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

FILED

**December 22, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**HEATHER S.,**
**Petitioner Below, Petitioner**

**v.) No. 25-ICA-276**　　(Fam. Ct. Tucker Cnty. Case No. FC-47-2020-D-6)

**JONATHAN S.,**
**Respondent Below, Respondent**


**MEMORANDUM DECISION**


　　Petitioner Heather S.[1] ("Mother") appeals the Family Court of Tucker County's June 10, 2025, final custody modification order, which reduced her parenting time to every other weekend during the school year. Respondent Jonathan S. ("Father") did not participate in this appeal.[2] The guardian ad litem ("GAL") responded in support of the family court's decision.[3]

　　This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

　　The parties divorced on March 9, 2021, and share one minor child, born in 2008. During the divorce proceedings, the parties reached a custody agreement where Father had parenting time every other weekend. The parties exercised shared equal decision-making authority with Mother designated as the primary residential parent. The family court ordered Father to pay Mother $962.97 per month in child support. At the time of the divorce proceedings, the child was homeschooled.

---

[1] To protect the confidentiality of the juveniles involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] We recognize our limited and circumspect review of a family court order in an uncontested appeal, like this one, when the respondent fails to participate on appeal to support the order.

[3] Mother is self-represented. The GAL is Shannon R. Thomas, Esq.

On September 30, 2022. Father filed a petition for modification of custody alleging that Mother interfered with his parenting time, used a tracking app to track the child during his parenting time, made unilateral decisions for the child, and that the child wanted to spend more time with him. On October 21, 2022, Mother filed an answer and counter-petition, stating that the child was fourteen years old and wanted to visit Father on her own terms.

On May 2, 2023, a hearing was held on the petition for modification. The parties reached a temporary parenting agreement to exercise equal shared custodial allocation of the child and to follow a week-on/week-off parenting plan.

On June 14, 2023, Mother filed a motion for emergency relief alleging that the child ran away on June 5, 2023, with a sixteen-year-old boy who resided near Father's home, and who was also homeschooled. After a statewide and surrounding state search, the children were found on June 10, 2023. Mother further alleged that Father's work schedule left the child unattended for most of the afternoon and that Father was unaware the child was spending significant amounts of time with the boy. As such, Mother requested that the court order the parties to return to their original parenting plan and that during Father's parenting time, the child would be supervised and prohibited from seeing the boy.

On June 15, 2023, the court entered an order denying Mother's petition for emergency relief. On June 23, 2023, Mother filed a renewed motion for temporary relief. On July 10, 2023, the family court entered its order from the May 2, 2023, hearing, approving the parties' agreement to share custodial allocation equally and to follow a week-on/week-off parenting plan. Also, on July 10, 2023, the family court entered an order scheduling a hearing on Mother's renewed motion for temporary relief for August 8, 2023.

On August 8, 2023, the parties appeared for a hearing on Mother's motion. On August 21, 2023, the court entered its order denying Mother's request to return to the parties' original parenting plan. The court further ordered that the child should continue in counseling, the parties should address the runaway issue with her counselor, and that the child was not to have any contact with the neighbor boy.

On December 12, 2023, Mother filed a motion for an in-camera interview of the child, stating that the child desired to return to the original parenting plan and that she would testify regarding certain issues that arose between Father and his spouse. On February 26, 2024, the court appointed Shannon R. Thomas as the GAL for the child.

The family court conducted a hearing on February 22, 2024, on Father's petition for modification and Mother's counter-petition. At the hearing, Mother presented three witnesses. The court also conducted an in-camera interview of the child. In its order entered April 2, 2024, the family court noted its concern about the child's homeschool development and that neither party had properly monitored the child's learning, as the child was unable

2

to state anything that she had learned while being homeschooled. The court also found that the child's desire to spend more time with Father likely came from her desire to spend time with the neighbor boy. The court ordered the parties and child to attend family counseling and restored the original parenting plan with Father having parenting time every other weekend. Father was ordered to pay Mother $656.03 per month in child support. Further, the family court ordered the child to start attending public school in the fall of 2024. The family court granted the parties a week-on/week-off parenting schedule for the summer.

The family court conducted another hearing on June 12, 2024. At that hearing, the GAL presented her report, which stated the following: (1) the child's relationship with the neighbor boy was problematic; (2) the neighbor boy forbade the child from swimming while on vacation because he did not like her bathing suit; (3) the neighbor boy forbade the child from being tutored because he did not want her around another male; (4) the child planned to marry the neighbor boy; (4) Father was committed to keeping the child away from the neighbor boy but Mother was less committed; (5) the child was behind in every school subject; and (6) the child had very poor school and life skills, as she believed $200 was sufficient for she and the neighbor boy to buy food for three years. The GAL recommended that the child attend public school in the county where Father resided and that Mother receive parenting time on the first, third, and fifth weekends of every month.

On January 13, 2025, an incorrigible petition was filed in the circuit court against the child for her defiant behavior. The petition noted that the child ran away from home, continued to have contact with the neighbor boy, had a secret cell phone, caused scenes in public, and required police intervention on three occasions, resulting in two Child Protective Services ("CPS") investigations. By order entered on January 21, 2025, the circuit court placed the child on a pre-adjudicatory community supervision period for six months. This program required the child to have faithful school attendance, make good grades, obey her parents, and participate in family therapy. After successfully completing her requirements, the circuit court entered an order on July 2, 2025, dismissing the incorrigibility case.

On May 6, 2025, prior to the dismissal of the incorrigibility case, the family court held a final hearing on Father's petition for modification and Mother's counter-petition. The court noted that there had been eight continuance requests, five of which came from Mother. The GAL presented her report, noting that the child desired to reside mostly with Mother, but that Mother had secretly provided the child a phone and criticized Father for making her attend school. The court made the following findings: (1) Mother admitted to the GAL that she fostered the child's relationship with the neighbor boy; (2) the GAL testified that Mother contributed to the child's bad behavior; (3) Father was seeking primary custody of the child; (4) Mother was seeking 50-50 parenting time; (5) the child's grades were good because Father has been diligent, not Mother; (6) Father was diligent in preventing the child from seeing the neighbor boy but, until recently, Mother was not; (7) the court believed that Mother would continue to undermine the child's relationship with

Father if it permitted her to have unfettered communication with the child; (8) there had been a substantial change in circumstances; (9) Mother has overtly and covertly interfered with, impaired, and impeded the parental rights of Father, under West Virginia Code § 48-9-209(a)[4]; and (10) the 50-50 presumption was rebutted.[5] The family court ruled that the child would attend public school, and that 50-50 custody was impractical due to the physical distance between the parties and the difficulty in getting the child to school. The parties were ordered to prevent any contact between the child and the neighbor boy. Mother was ordered not to provide a cell phone or communication device to the child during Father's parenting time. The family court further ordered Father to monitor the child's conversations with Mother. The family court granted Mother parenting time with the child on alternating weekends from Friday at 7:00 p.m. until Sunday at 7:00 p.m., plus holiday time and a week-on/week-off schedule during summer. The family court ordered the child to attend counseling until she was released by the counselor. The family court entered its final order on June 10, 2025, and this appeal followed.

For these matters, we apply the following standard of review:

When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

On appeal, Mother failed to raise any assignments of error. Instead, she expressed her dissatisfaction with the outcome below and asserted that the family court abused its discretion by failing to properly consider or to afford proper weight to certain evidence. However, "[a]n appellate court may not . . . weigh evidence as that is the exclusive function and task of the

---

[4] West Virginia Code § 48-9-209(a)(4) (2024) states the family court shall consider whether a parent has "overtly or covertly, persistently violated, interfered with, impaired, or impeded the rights of a parent or a child with respect to the exercise of shared authority, residence, visitation, or other contact with the child."

[5] West Virginia Code § 48-9-102a (2022) states the following:

There shall be a presumption, rebuttable by a preponderance of the evidence, that equal (50-50) custodial allocation is in the best interest of the child. If the presumption is rebutted, the court shall, absent an agreement between the parents as to all matters related to custodial allocation, construct a parenting time schedule which maximizes the time each parent has with the child and is consistent with ensuring the child's welfare.

trier of fact." *In re the Marriage/Child. of Matt N. v. Michele I.*, No. 14-0090, 2014 WL 6724758, at \*5 (W. Va. Nov. 25, 2014) (memorandum decision) (citing *State v. Guthrie,* 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995)). Additionally, Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires, in relevant part, that "[t]he argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal." Here, the family court reviewed the evidence presented over the course of at least five hearings and determined which evidence was salient to the issues being considered and the weight it should afford such evidence. While Mother disagrees with the family court's interpretation and resolution of conflicting evidence, we cannot conclude that the family court's findings were clearly wrong or that its application of the law to the facts was an abuse of discretion. Additionally, Mother failed to cite any portion of the record in support of her claims. As such, we find no basis to grant the relief Mother seeks.

Accordingly, we affirm the family court's June 10, 2025, final order.

Affirmed.


**ISSUED:** December 22, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

5